### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:22-cv-21306-JEM/Becerra

BAYPORT FINANCIAL
SERVICE (USA) INC. and
BAYPORT COLOMBIA, S.A.,

      Plaintiffs,

v.

BAYBOSTON MANAGERS, LLC, *et al.*,

      Defendants.

_____/

### OMNIBUS REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' AMENDED COMPLAINT[1]

THIS CAUSE came before the Court on four related motions.  First, Defendants BayBoston Managers, LLC ("BayBoston"), CFG Partners L.P. ("CFG Partners"), and CFG Partners Colombia, S.A.S. ("CFG Colombia") (collectively, the "Corporate Defendants") filed a Motion to Dismiss Plaintiffs' Amended Complaint, ECF No. [41], (the "Corporate Defendants' Motion to Dismiss"), ECF No. [52].  Defendants Pablo Montesano and Lucia Lopina (collectively, the "Individual Defendants") filed a Notice of Adoption of the Corporate Defendants' Motion to Dismiss, ECF No. [55]. Second, Defendant Pablo Montesano ("Montesano") filed a Motion to Dismiss the Amended Complaint ("Montesano's Motion to Dismiss"), ECF No. [53].  Third, Defendant Lucia Lopina ("Lopina") filed a Motion to Dismiss the Amended Complaint ("Lopina's Motion to Dismiss"), ECF No. [54], and filed a Notice of Adoption of Montesano's Motion to Dismiss, ECF No. [56].  Plaintiffs Bayport Financial Services (USA) Inc. and Bayport Colombia

---

[1]  This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge.  ECF No. [83].

S.A. (collectively, "Plaintiffs") filed a Consolidated Response in Opposition to the Corporate Defendant's Motion to Dismiss, Montesano's Motion to Dismiss, and Lopina's Motion to Dismiss (the "Opposition to Motions to Dismiss"), ECF No. [74].  The Corporate Defendants filed a Reply, ECF No. [91], Montesano filed a Reply, ECF No. [87], and Lopina filed a Reply, ECF No. [88].[2]

Finally, the Individual Defendants filed a Request for Judicial Notice, requesting that the Court take judicial notice of facts to support the three pending Motions to Dismiss (the "Motion for Judicial Notice"), ECF No. [51].  The Corporate Defendants subsequently filed a Motion to Adopt the Motion for Judicial Notice, ECF No. [57], which included additional arguments. Plaintiffs filed a Consolidated Opposition to the Motion for Judicial Notice and the Corporate Defendants' Motion to Adopt the Motion for Judicial Notice (the "Opposition to Judicial Notice"), ECF No. [76].  The Individual Defendants filed a Reply, ECF No. [89], and the Corporate Defendants filed a Reply, ECF No. [92].

After a review of the instant Motions, the pertinent portions of the record, and the relevant authorities, and for the reasons stated below, it is hereby **RECOMMENDED** that the Corporate Defendants' Motion to Dismiss, ECF No. [52], Montesano's Motion to Dismiss, ECF No. [53], Lopina's Motion to Dismiss, ECF No. [54], and the Motion for Judicial Notice, ECF No. [51] be **DENIED**, and that the Motion to Adopt the Motion for Judicial Notice, ECF No. [57], be **GRANTED** to the extent that it requests that the Court consider the arguments in the Motion for Judicial Notice as also applying to the Corporate Defendants, and **DENIED**, as to the substantive arguments.

---

[2] The Corporate Defendants also filed a Motion to Stay Discovery (the "Motion to Stay Discovery"), pending the resolution of the Motions to Dismiss.  ECF No. [63].  The Individual Defendants filed a Notice of Adoption, ECF No. [64], Plaintiffs filed an Opposition, ECF No. [75], and the Corporate Defendants filed a Reply, ECF No. [90].  After review of the Motion, the undersigned **RECOMMENDS** that the Motion to Stay Discovery be **DENIED AS MOOT**.

## I.      THE AMENDED COMPLAINT

The two Plaintiffs in this case are part of Bayport Management Ltd. (the "Bayport Group"), a conglomerate which provides "an array of financial solutions to consumers," including both retail and payroll consumer loans, "with a particular focus on government employees and pensioners such as police officers and public school teachers." ECF No. [41] ¶ 41. The Bayport Group focuses their business on "geographic areas that often lack a full array of credit options for consumers," including several countries in Africa and, relevant herein, Latin America. *Id.* ¶¶ 41–44. Plaintiff Bayport Financial Services (USA) Inc. ("Bayport USA"), a subsidiary of the Bayport Group, services the Bayport Group's operations in Colombia and Mexico. *Id.* Plaintiff Bayport Colombia S.A. d/b/a Dando ("Bayport Colombia"), a subsidiary of Bayport USA, provides payroll financing to government institutions in Colombia. *Id.* ¶ 43. From some time before the scheme alleged, CFG Partners and BayBoston were engaged in a similar financial service business to Plaintiffs. *Id.* ¶¶ 2, 5, 34–38. However, while Plaintiffs had operations in Latin America prior to 2020, Defendants CFG Partners and BayBoston did not. *Id.* ¶ 3–6.

The Amended Complaint alleges that Defendant CFG Partners—along with its sole shareholder, Defendant BayBoston Managers LLC ("BayBoston"), were the "chief architects of the scheme" at issue. *Id.* ¶ 2. Indeed, Plaintiffs allege that two of its corporate executives were covertly working with and providing information to Defendant CFG Partners LLC ("CFG Partners") in a scheme to sabotage Plaintiffs' business and further CFG Partners' expansion into Latin America. *See generally* ECF No. [41]. Those executives are the two Individual Defendants—Pablo Montesano and Lucia Lopina. *Id.*

Pursuant to Plaintiffs' Amended Complaint, after years of working with the Bayport Group, Defendant Montesano joined Bayport USA as its Managing Director of Latin America. *Id.*

¶¶ 55–56.  In May 2017, Montesano executed an employment agreement with Bayport USA, memorializing his role as the Managing Director.  *Id.*  Montesano's job duties included: "general management;" managing Latin American teams; "collaborating with local teams;" and "originating new business opportunities."  *Id.* ¶ 57.  Montesano's employment agreement contained several key terms to the allegations in the Amended Complaint, including: (1) a ***confidentiality provision***, requiring him to "keep strictly confidential any and all technical and business information . . . and [] not disclose the same to any third party";  (2) a ***non-competition provision***, prohibiting the disclosure of trade secrets or client identities "to any person, directly or indirectly, other than the Groups Board of Directors) during or after his employment," prohibiting him from engaging in "any business which is in competition or similar in nature to that conducted by [Bayport USA] or the [Bayport] Group," and prohibiting him from "engag[ing] into any activity in the Prescribed Area [defined as the geographic area where Bayport USA provides services] which would undermine the position of [Bayport USA]" during his employment and for twelve additional months; and (3) a ***non-solicitation provision***, prohibiting him from offering employment to Plaintiffs' employees or consultants or inducing them to leave the company for a specified time period, especially to work for a competing business.  *Id.* ¶¶ 59–70.  In addition, the employment agreement contained an outline of duties, which included the agreement to "protect and promote the business and interests," to "show the utmost good faith," to refrain from involvement in [any business or activity] which may give rise to a conflict of interest," and to "disclose any potential conflicts of interest at the earliest opportunity."  *Id.* ¶ 58.

Defendant Lopina joined the Bayport Group in 2016 as the Product and Operations Director of Bayport's Colombia and Mexico markets.  *Id.* ¶ 71.  Due to her visa status at the time, Lopina joined the company as a contractor rather than an employee.  *Id.*  In May 2020, once her

4

visa status changed, Lopina became CEO of Digital for Latin America as an employee of Bayport USA. *Id.* ¶¶ 71–75. Lopina was accordingly promoted in early 2021 and reported directly to Montesano in her new role. *Id.* ¶¶ 74–75. Montesano had an employment agreement drafted for Lopina's new role, which she negotiated and agreed to but never signed. *See id.* ¶¶ 76–81, 121. Lopina's employment agreement contained key terms, including: (1) a requirement to "protect Bayport USA and the Bayport Group's business interests; preserve their reputation and goodwill; demonstrate the utmost good faith; avoid conflicts of interest; and to be true and faithful in all dealings and transactions"; (2) a ***confidentiality provision***, similar to that of Montesano; (3) a ***non-competition provision***, similar to that of Montesano; and (4) a ***non-solicitation provision***, similar to that of Montesano. *Id.* ¶¶ 81–82. Although Lopina did not sign her employment agreement, Plaintiffs maintain that she accepted it through her actions, including the fact that she negotiated the terms of her employment, completed her employee health insurance application, completed her new payroll form, and continued her work for Bayport USA, accepting both new responsibilities and a higher pay. *See id.* ¶¶ 77–82.

According to the Amended Complaint, Defendants CFG Partners and BayBoston targeted Montesano and Lopina, as part of their plan "to pilfer Plaintiffs' valuable trade secrets and their top executives for business operations, and use them to expand CFG Partners' operations into new turf: Colombia, Mexico, and Latin America." *Id.* ¶¶ 3–4. Plaintiffs allege that Defendants CFG Partners and BayBoston first contacted Montesano in January 2020, through an intermediary—Julian Lautersztain, the vice president of Cerberus Capital Management ("Cerberus"). *Id.* ¶ 85. Through this introduction, Montesano met Eduardo Arguello ("Mr. Arguello"), Senior Vice President of Strategy for CFG Partners, and later Carlos Garcia ("Mr. Garcia"), Founding CEO and Managing Partner of BayBoston, and board chairman of CFG Partners. *Id.* ¶¶ 85–88.

In late January 2020, Montesano, at the invitation of Mr. Arguello, met with both Mr. Arguello and Mr. Garcia in person for a dinner at a restaurant in Miami called Swan (the "Swan Meeting"). *Id.* ¶¶ 87–88. Montesano did not disclose the Swan Meeting to Plaintiffs, despite the fact that he was meeting with a direct competitor, nor did he require Mr. Arguello or Mr. Garcia to execute a non-disclosure agreement, which Plaintiffs allege he was obligated to do. *Id.* ¶¶ 90–91. Plaintiffs contend that the purpose of the meeting was to persuade Montesano to join the scheme and take down Plaintiffs' operations from the inside. *Id.* ¶¶ 85–91. The Swan Meeting, according to Plaintiffs, was the beginning of the end for Plaintiffs' dominance in the Latin American marketplace. *See id.* ¶¶ 89–90.

Shortly thereafter, Montesano, at the expense of Bayport Mexico, flew to Boston to meet with executives of CFG Partners and BayBoston. *Id.* ¶¶ 92. The Amended Complaint alleges that days before his departure, Montesano directed Lopina to send him "a variety of confidential information, including Plaintiffs' private plan to move more of their products onto a digital platform," and a PowerPoint presentation including "confidential information about Bayport Colombia's digital products for certain customers in the Colombian police department." *Id.* ¶¶ 93–94. The PowerPoint (referred to in the Amended Complaint and herein as the "Digital Origination Confidential CFG PowerPoint") contained confidential information regarding "one of Bayport Colombia's most lucrative client bases in Colombia." *Id.* ¶ 94. Specifically, the Amended Complaint alleges that the Digital Origination Confidential CFG PowerPoint contained "information that constitutes Plaintiffs' trade secrets, such as commission rates, costs per loan, credit and loan processes, information about Plaintiffs' IP and credit algorithms," as well as "business strategies and advantages and disadvantages for different methodologies and processes

that Plaintiffs use." *Id.* ¶ 95.  Plaintiffs allege that Montesano shared the PowerPoint and/or its contents with Defendants CFG Partners and BayBoston at their meeting. *Id.* ¶¶ 96–98.

In early March 2020, Mr. Garcia traveled to Plaintiffs' office in Mexico City to meet with Montesano and Walter Klucznik, Bayport Mexico's CEO. *Id.* ¶ 99.  The purpose of the meeting, according to Mr. Garcia, was to discuss CFG Partners' desire to purchase Bayport Colombia and Bayport Mexico. *Id.*  Plaintiffs contend that Defendants CFG Partners and BayBoston had no intention of purchasing Bayport Colombia or Bayport Mexico at all, but rather that the true purpose of the meeting was for Montesano to allow Mr. Garcia to gain information about Plaintiffs' operations. *Id.* ¶ 125.

According to the Amended Complaint, after the meeting in Mexico, Montesano and Lopina began to "act on behalf of CFG Partners and BayBoston while still employed at Bayport." *Id.* ¶ 103.  Plaintiffs allege that in April 2020, Montesano "engineered the layoff of 216 Bayport Colombia employees and the closing of ten branches." *Id.* ¶ 105.  In April and June 2020, Montesano and Lopina also "championed the 'Dragonfly Project,'" which Plaintiffs contend was another "attempt at cutting headcount for the purpose of unsettling employees and laying the groundwork for a discount purchase by CFG Partners." *Id.* ¶¶ 106–07.  Plaintiffs also allege that Montesano and Lopina met secretly with Mr. Garcia regarding the "Dragonfly Project." *Id.* ¶ 108.

In July 2020, Mr. Garcia met with Bayport's Co-Founder and CEO for the purpose of discussing an acquisition of the Bayport Group's Latin American operations. *Id.* ¶ 110.  A month later, CFG Partners, BayBoston, and the Bayport Group executed a non-disclosure agreement to protect the non-public information that would be disclosed during negotiations concerning the acquisition. *Id.* ¶ 111.  When as part of the acquisition discussions Montesano was introduced to

Mr. Garcia, Montesano did not disclose to Plaintiffs that he already knew and had been in contact with Mr. Garcia for approximately six months.  *Id.* ¶ 112.

As the negotiations continued, Montesano engineered additional meetings with CFG Partners and BayBoston, and "began to involve himself more frequently in the operations of Bayport Colombia" for the first time.  *Id.* ¶¶ 114–15.  While Montesano appeared "keen upon closing CFG Partners' acquisition of Bayport's payroll business for Latin America," he was really "positioning himself to access even more of Plaintiffs' confidential information, which would in turn increase his value as a double agent for CFG Partners and BayBoston."  *Id.*  ¶ 115.

As to Lopina's role in the "scheme," the Amended Complaint alleges that around the same time that Montesano became more involved in Bayport USA's business, he promoted Lopina to CEO Digital, and included her in more high-level meetings.  *See id.* ¶¶ 116–18.  Plaintiffs allege that Montesano's "efforts" to have Lopina sign a new employment agreement were truly a sham, as the two "secretly agreed that she would not execute the employment agreement," and CFG Partners and BayBoston were aware of and supported the agreement.  *Id.* ¶¶ 118–24.  Without a written employment agreement, Defendants would be better able to "use Ms. Lopina as CFG Partners and BayBoston's principal recruiter of other Bayport executives to their covert scheme," without having legal exposure, which Plaintiffs maintain was a meritless plan as Lopina did "accept" her employment agreement albeit without signing it.  *Id.* ¶ 121–24.

In March 2021, the acquisition talks fell apart.  *Id.* ¶ 125.  Defendants CFG Partners and BayBoston "walked away from the proposed acquisition" after Plaintiffs declined their "lowball offer."  *Id.*  Instead, Plaintiffs allege that CFG Partners and BayBoston later offered to buy-out another company, Alpha Credit, for $20 million more than what they offered Plaintiffs.  *Id.*

Shortly thereafter, Lopina issued her notice of resignation on April 8, 2021. *Id.* ¶ 127. Montesano concealed her resignation from Plaintiff for eleven days—during which Lopina "collected [confidential] information" and Plaintiffs were "prevent[ed] from taking steps to protect themselves from the unfolding plot." *Id.* ¶¶ 128–30. Lopina's last day at Bayport USA was May 31, 2021, when she filled out her termination form (noting "falsely" that she was a contractor rather than CEO Digital), failed to certify that she erased confidential data from her laptop, and improperly took her laptop with her upon leaving. *Id.* ¶¶ 130–32.

Montesano issued his notice of resignation on May 12, 2021. *Id.* ¶ 133. Montesano's last day at Bayport USA was August 13, 2021, when he also failed to certify that he erased confidential data from his laptop, and allegedly improperly took his laptop with him upon leaving. *Id.* ¶¶ 133–37. Thereafter, a "wave of executive departures" followed, including five employees of the Bayport Group. *Id.* ¶ 139. These departures, Plaintiffs allege, were the work of Defendants CFG Partners, BayBoston, Montesano, and Lopina. *Id.* The Amended Complaint alleges that Defendants used confidential compensation and benefit information from the Individual Defendants to lure away Plaintiffs' employees. *Id.* at 145–47.

Around the same time, CFG Partners incorporated CFG Colombia. *Id.* ¶ 140. Notably, all five employees that Plaintiffs allege were lured away using ill-gotten confidential information, left the Bayport Group to join CFG Colombia—as did Lopina herself, now the "CEO Colombia" of CFG Colombia. *Id.* ¶¶ 21, 139, 145–47. Montesano did not join CFG Colombia directly, but rather started a new company called Kumano Ventures, which Plaintiffs allege is simply a "front" for CFG Colombia. *Id.* ¶ 138.

In short order, CFG Colombia launched a digital platform, "shamelessly copied and pasted Bayport Colombia's online interface, policies, and procedures," and "cop[ied] and past[ed]

Bayport Colombia's online origination application process—which is only accessible to Bayport's verified customers." *Id.* ¶¶ 142–45.  CFG Colombia also quickly retained its first customer, the Colombian police—the same client that was the subject of the confidential PowerPoint shared by the Individual Defendants to the Corporate Defendants the year prior.  *See id.* ¶ 141.   The Amended Complaint contrasts CFG Colombia's acquisition of the Colombian police as a client with CFG Colombia's failure to acquire the Colombian Army as a client, alleging that CFG Colombia's possession of Plaintiffs' valuable confidential information and trade secrets about the police made the difference.  *Id.* ¶ 153.

The final act alleged in the Amended Complaint concerned an auction of competitor Alpha Credit's assets.  *Id.* ¶ 150.  Plaintiffs allege that Cerberus selected Bayport Colombia as its partner to service the loans it sought to acquire from Alpha Credit at the sale.  *Id.*  The two companies worked together to prepare a proposal for the auction.  *Id.*  According to the Amended Complaint, CFG Partners outbid Cerberus at the auction using "Plaintiffs' trade secrets and confidential information, including their pricing strategy, methodology, and employee salaries and benefits." *Id.* ¶ 151.  Plaintiffs followed the Alpha Credit incident with cease-and-desist letters to Defendants CFG Colombia, Montesano, and Lopina—all of which went unanswered.  *Id.* ¶¶ 157–58.

Plaintiffs initiated the instant action on April 26, 2022, with the filing of their Complaint, ECF No. [1].  The Individual Defendants and the Corporate Defendants each moved to dismiss the Complaint.  ECF Nos. [27]; [30]; [35].  Thereafter, Plaintiffs filed an Amended Complaint, which is at issue herein, ECF No. [41].

The Amended Complaint contains eleven counts, against two groups of defendants: the Corporate Defendants and the Individual Defendants.  Count I alleges breach of contract against the Individual Defendants; Count II alleges, in the alternative, breach of implied-in-fact contract

against Defendant Lopina only; Count III alleges breach of fiduciary duties against the Individual Defendants; Count IV alleges aiding and abetting breach of fiduciary duties against all Defendants; Count V alleges misappropriation of trade secrets under Florida's Uniform Trade Secrets Act against all Defendants; Count VI alleges misappropriation of trade secrets under the Federal Defend Trade Secrets Act against all Defendants; Count VII, asserted by Plaintiff Bayport Colombia only, alleges civil theft against the Individual Defendants; Count VIII, asserted by Bayport Colombia only, alleges conversion against the Individual Defendants; Count IX, asserted by Bayport Colombia only, alleges violation of the Computer Fraud and Abuse Act pursuant to 18 U.S.C. §§ 1030(a)(2)(C), (b) against the Individual Defendants; Count X, asserted by Bayport Colombia only, alleges violation of the Florida Computer Abuse and Data Recovery Act against the Individual Defendants; and Count XI alleges tortious interference with contractual relations against all Defendants.  ECF No. [41] ¶¶ 172–269.  In short, Counts IV, V, VI, and XI are alleged against all Defendants; Counts I, III, VII, VIII, IX, and X are alleged against the Individual Defendants only; and Count II is alleged against Defendant Lopina only.  *Id.*

## II.    THE MOTIONS TO DISMISS AND THE MOTION FOR JUDICIAL NOTICE

Defendants move to dismiss all counts of the Amended Complaint.  As to the counts against all Defendants—Counts IV, V, VI, and XI—Defendants argue that each fails to state a claim upon which relief can be granted.  Specifically, Defendants ask the Court to "strip away" all allegations regarding the "scheme" and "double agent theory" and argue that the remaining allegations necessarily fail to state a claim on any count because they are insufficient and speculative.  *See generally* ECF Nos. [52], [53], [54], [55] (adopting the arguments in ECF No. [52]).

The Individual Defendants argue that the remaining counts against them—Counts I, II, III, VII, VIII, IX, and X—should also be dismissed for failure to state a claim.  *See generally* ECF

Nos. [53], [54]. The Individual Defendants echo their prior argument as to Counts I and III, arguing that the allegations therein must be stripped of any conclusions regarding the "scheme," "double agent[s]," or "secret meetings," and that the remaining allegations fail to state a claim. ECF Nos. [53] at 2, 11–17; [54] at 6–11; [56] at 1. Defendant Lopina separately argues that Counts I and II must fail against her because she never had an employment agreement with Plaintiffs, and the agreement presented by Plaintiffs was neither agreed to nor signed by Lopina. ECF No. [54] at 12–14. As to Count VII, the Individual Defendants argue that Plaintiffs' failure to provide written notice in compliance with the Florida Statutes merits dismissal of the civil theft claim. ECF Nos. [53] at 20–21; [54] at 11; [56] at 2. As to Counts VIII and IX, the Individual Defendants argue that the counts are inherently inconsistent with both each other and the general allegations of the Amended Complaint, also meriting dismissal. ECF Nos. [53] at 22–23; [54] at 11–12; [56] at 2. As to Count X, the Individual Defendants argue that the allegations are too speculative and fail to plead any concrete facts to support the alleged unlawful access of their network or computers, including dates, times, or information accessed. ECF Nos. [53] at 17–18; [54] at 11.

Finally, the Corporate Defendants also argue that the Amended Complaint fails to assert personal jurisdiction over them, pursuant to both the Florida Long Arm Statute and the Due Process Clause. ECF No. [52] at 25–27. The Corporate Defendants argue that Plaintiffs' "*de minimis*" allegations are unsatisfactory to establish business presence in Florida, relevant conduct associated with such presence, and tortious conduct by the Corporate Defendants in Florida. *Id.* As to due process, the Corporate Defendants argue that they should not be subject to lengthy litigation in Florida when the Amended Complaint is "baseless." *Id.* at 27.

To support their Motions to Dismiss, Defendants also move the Court to take judicial notice of certain facts. ECF Nos. [51], [57]. Specifically, the Individual Defendants' Motion for Judicial

Notice requests that the Court take judicial notice of two transcripts concerning the bankruptcy auction of competitor Alpha Credit—an auction that is discussed briefly in the Amended Complaint.  ECF No. [51]; *see also* ECF No. [41] at 36–37.  The Individual Defendants argue that judicial notice is proper because the transcripts are part of the public record and Plaintiffs are "well aware" of their existence.  ECF No. [51] at 3.  The Corporate Defendants adopt the Individual Defendants' Motion and add that judicial notice is proper because the bankruptcy filings contain facts that are critical "to the determination of a number of issues in this case."  ECF No. [57] at 4. In response, Plaintiffs argue that judicial notice is improper because the bankruptcy transcripts are not adjudicative facts, are impermissibly offered for the truth of the matter asserted, and are not central to Plaintiffs' claims. ECF No. [76] at 1, 6–7. In reply, Defendants argue that judicial notice is not sought for the truth of any matter asserted and that the facts at issue are both relevant to and properly noticed in support of their motion to dismiss. ECF No. [89] at 3, 5–9.

III.        ANALYSIS

The Court will first address the Motion for Judicial Notice, as that motion impacts the arguments to be considered on the Motions to Dismiss.  The Court will then proceed to the arguments to dismiss the counts plead as to all Defendants (Counts IV, V, VI, and XI), and then the counts plead as to the Individual Defendants (Counts I, II, III, VII, VIII, IX, and X).  Finally, the Court will address the jurisdictional arguments raised by the Corporate Defendants.

A.    The Motion To Take Judicial Notice Should Be Denied.

"Judicial notice is a means by which adjudicative facts not seriously open to dispute are established as true without the normal requirements of proof by evidence."  *Dippin' Dots, Inc. v. Frosty Bites Dist., LLC*, 369 F.3d 1197, 1204 (11th Cir. 2004) (citing FED R. EVID. 201(a), (b)). Requests for judicial notice are governed by Federal Rule of Evidence 201. *See Bryant v. Avado*

*Brands, Inc.*, 187 F.3d 1271 (11th Cir. 1999).  Rule 201(d) states that judicial notice is appropriate at "any stage of the proceeding," and the Eleventh Circuit has found this to include the motion to dismiss stage.  Fed. R. Evid. 201(d); *see U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811–12 (11th Cir. 2015) (explaining that a district court may review judicially noticed documents while considering a 12(b)(6) motion) (citing *Bryant*, 187 F.3d at 1278).

"While a court has wide discretion to take judicial notice of facts, *see* Fed. R. Evid. 201(c), the 'taking of judicial notice of facts is, as a matter of evidence law, a highly limited process.'" *Dippin' Dots, Inc.*, 369 F.3d at 1204–05 (quoting *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997)).  This is so because "the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court." *Id.* (quoting *Shahar*, 120 F.3d at 214). Thus, judicial notice of a fact is appropriate only where the fact is not subject to reasonable dispute because it is "generally known within the trial court's territorial jurisdiction," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Additionally, the fact at issue must be "relevant to a determination of the claims presented in a case." *Dippin' Dots, Inc.*, 369 F.3d at 1204.

Defendants seek judicial notice of two filings in a separate bankruptcy matter, *In re: Alpha Latam Management, LLC, et al.*, Case No. 21-11109-JKS (Bankr. D. Del.) (the "Alpha Bankruptcy").  ECF No. [51] at 1–2.  Through these filings, Defendants seek to prove the following facts: (1) "Debtor's Counsel, White & Case, held this [bankruptcy] auction out of its Miami office," (2) "Cerberus' bid took third place in the auction, with CFG Partners ending as the Successful Bidder, and CarVal as the Backup Bidder," (3) "White & Case, observed the Stalking Horse bidder 'Cerberus' leave the auction before it concluded," and (4) "neither Plaintiffs (nor any

other Bayport entity) are identified as a bidder."[3]  ECF No. [51] at 4.  Defendants argue that judicial

notice is appropriate because the Alpha Bankruptcy filings are public records, of which Plaintiffs

and their counsel are "well aware."  *Id.* at 3.

Plaintiffs respond that Defendants' legal basis for judicial notice is fatally flawed.  First,

Plaintiffs argue that "transcribed statements made by lawyers or anyone else at a hearing" are not

adjudicative facts subject to judicial notice because they are not legal findings made by a Court

but rather argument only.  ECF No. [76] at 3–4.  Second, Plaintiffs argue that Defendants are

attempting to use the transcripts at issue for the truth of the matter asserted therein, which is

improper under Federal Rule of Evidence 201.  *Id.* at 4–7.  Finally, Plaintiffs argue that the "facts"

at issue are not even central to Plaintiffs' claim and cannot be considered to support a motion to

dismiss.  *Id.* at 7.

Both the Individual Defendants and the Corporate Defendants filed replies in support of

their Motions for Judicial Notice.  ECF Nos. [89], [90].  The Individual Defendants argue that the

universe of facts for which judicial notice is proper is broader than Plaintiffs suggest.  ECF No.

[89] at 3.  The Individual Defendants assert that judicial notice herein is not sought for the truth of

the matter asserted within transcripts, but rather for facts within transcripts.  *Id.* at 5.  Finally, the

Individual Defendants note that the facts need not be "central" to the matter for judicial notice to

be proper.  *Id.* at 8.  The Corporate Defendants similarly argue that judicial notice is not sought for

the truth of any matter asserted.  ECF No. [90] at 2.  Rather, the Corporate Defendants maintain

that the facts are more akin to procedural facts and "judicial acts" rather than substantive truths.

---

[3] In their Motion for Judicial Notice, Defendants listed an additional fact for judicial notice: "Bayport Colombia is only identified as a potential loan 'reporter' or 'servicer.'" ECF No. [51] at 4; [57] (adopting the arguments in ECF No. [51]).  However, in their Reply, the Individual Defendants state they no longer seek judicial notice of that fact.  ECF No. [89] at 7.

*Id.* Finally, the Corporate Defendants also contend that the facts are relevant to the claims and issues in the case such that judicial notice is proper. *Id.* at 3.

A court may take judicial notice of a filing in a separate action—as Defendants herein request—in limited circumstances. *See In re Takata Airbag Products Liability Litigation*, 396 F. Supp. 3d 1101, 1129 (S.D. Fla. 2019) ("The Court may [] judicially notice a public record because a document filed in another court is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'") (quoting *Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1364 (S.D. Fla. 2016) (quoting *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999))). For instance, a filing may be judicially noticed for its existence, or the existence of the claims therein. *See id.*; *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53–54 (11th Cir. 2006) (district court properly took judicial notice of a separate complaint for the fact that it included claims constituting an adequate alternative remedy); *Osheroff*, 776 F.3d at 811–12 (district court properly took notice of several public filings in a state court case, including a hearing transcript, for that fact that such litigation took place). However, it is improper to take judicial notice of a filing in a separate action for the *truth* of the matter asserted therein. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (district court erred when it took judicial notice of the findings supporting an order in a separate case because the order did not "indisputably establish" said findings) (citing *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388–89 (2d Cir.1992) (district court erred in granting summary judgment based on a finding of fact within a bankruptcy court order)).

While the Court may take judicial notice of the fact that the Alpha Bankruptcy proceeding occurred, or that certain transcripts were filed therein (were such facts relevant), Defendants ask the Court to go further. Defendants request that the Court to look *into* the Alpha Bankruptcy

transcripts and take judicial notice of facts gleaned therefrom.  Such a request would require the Court find that the underlying facts are true, which is squarely prohibited in the Eleventh Circuit. *See In re Takata Airbag Products Liability Litigation*, 396 F. Supp. 3d 1101, 1129 (S.D. Fla. 2019) ("The effect of such judicial notice is limited, however, and is taken 'not for the truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'") (internal citations omitted) (quoting *Jones*, 29 F.3d at 1553).

Further, the facts at issue within the Alpha Bankruptcy transcripts are not relevant at this stage.  Indeed, whether Plaintiffs' counsel hosted a bankruptcy auction in their office, even if true, has no bearing on the instant action or any claim therein.  While the Amended Complaint mentions the Alpha Bankruptcy, it does so in only two paragraphs, as one of several examples of Defendants' alleged acts of usurping corporate opportunities using Plaintiffs' confidential information and trade secrets.  *See* ECF No. [41] ¶¶ 150–51.  Defendants seek to use judicial notice as a vehicle by which they can show that discreet claims within the Amended Complaint are false.  Such a request is improper at this stage.  Thus, it is hereby **RECOMMENDED** that the Motion for Judicial Notice, ECF No. [51], and the additional substantive arguments in the Motion to Adopt the Motion for Judicial Notice, ECF No. [57], be **DENIED**.

### B.    The Rule 12(b)(6) Motions to Dismiss Should Be Denied.

To prevail on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Checker Cab Operators, Inc. v. Miami-Dade Cnty.*, 899 F.3d 908, 915 (11th Cir. 2018) (quoting *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213,

1221 (11th Cir. 2016)).  This plausibility standard requires more than a "sheer possibility" that a defendant has acted unlawfully.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  An "unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice.  *Id.*

As noted above, the following claims are alleged against all Defendants: aiding and abetting breach of fiduciary duties (Count IV); misappropriation of trade secrets under Florida's Uniform Trade Secrets Act (Count V); misappropriation of trade secrets under the Federal Defend Trade Secrets Act (Count VI); and tortious interference with contractual relations (Count XI).  ECF No. [41] ¶¶ 201–31, 261–69.  As to these counts, Defendants argue that the Amended Complaint fails to state a claim upon which relief can be granted.  *See* ECF Nos. [52] at 20–21; [53] at 14–17; [54] at 11; [55] at 2; [56] at 1–2.  The Court will address the Counts against all Defendants first, and then proceed to those against the Individual Defendants.

<u>**Count IV:**</u>  To state a claim for aiding and abetting breach of fiduciary duties (Count IV), a plaintiff must show: "(1) a fiduciary duty on the part of the primary wrongdoer, (2) a breach of this fiduciary duty, (3) knowledge of the breach by the alleged aider and abettor, and (4) the aider and abettor's substantial assistance or encouragement of the wrongdoing."  *Medical & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 990 (11th Cir. 2020) (quoting *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991)).

Defendants urge the Court to "strip away" all conclusory allegations in the Amended Complaint arguing that once such allegations are removed, the remaining allegations are insufficient to proceed on any count.  *See* ECF Nos. [52] at 15, 19–24; [53] at 14–23; [54] at 6–12; [55] at 2; [56] at 1–2.  Defendants propose that removing the conclusory allegations effectively removes the "scheme" between the Corporate Defendants and the Individual Defendants.  *See* ECF Nos. [52] at 15, 19–24; [53] at 14–23; [54] at 6–12; [55] at 2; [56] at 1–2.  Without the "double

18

agent" theory, Defendants argue that there is nothing in the Amended Complaint linking the Corporate Defendants to the actions of the Individual Defendants. ECF Nos. [52] at 20–21; [55] at 2. [53] at 14–23; [54] at 6–11. Specifically, Defendants appear to take issue with the third and fourth elements of Count IV: knowledge of the breach by the alleged aider and abettor, and the aider and abettor's substantial assistance or encouragement of the wrongdoing. ECF Nos. [74] at 16; [91] at 12. Indeed, the vast majority of *all* the arguments presented by the Defendants is that the "double agent" theory is not sufficiently plead, and therefore the entire Amended Complaint fails. *See* ECF Nos. [52], [53], [54]. In doing so, Defendants focus on certain allegations in a vacuum, while ignoring others which clearly set out sufficient allegations to survive a Rule 12(b)(6) Motion.

Plaintiffs respond that Defendants' arguments as to Count IV "leave the Court (and Plaintiffs) guessing as to what specific element(s) Defendants contend is deficient," as they failed to identify which element(s) of Count IV are at issue. ECF No. [74] at 16. This alone, Plaintiffs argue is enough to deny the Motions to Dismiss as to Count IV. *Id.* Plaintiffs maintain that they have sufficiently stated a claim for aiding and abetting breach of fiduciary duties against all Defendants, and that Defendants' "alternative factual narrative" that what conspired was no more than marketplace competition at work, should not be accepted by the Court at the motion to dismiss stage. *Id.* at 12.

In reply, Defendants state that Plaintiffs "did not even attempt to address the elements of Count IV in *their* Response." ECF No. [91] at 12 (emphasis added). Defendants argue that they clearly attacked both the requirement that "the alleged aider and abettor ha[d] knowledge of [the primary wrongdoer's] breach," and that "the aider and abettor substantially assisted or encouraged the wrongdoing." *Id.* (quoting *eLandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1331 (S.D.

Fla. 2010)).  Without the "double agent" theory, Defendants argue that neither element can be satisfied.  *Id.* at 12–13.

As an initial matter, the Court notes that it must accept the allegations in Plaintiffs' Amended Complaint as true for the purpose of this analysis.  *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1214 (S.D. Fla. 2021) ("When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the facts alleged.") (citing *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012)).  While Defendants pose an alternate narrative as to the reasons underlying the actions at issue (standard free market competition, COVID-19's impact on the industry, and a legal acquisition of Plaintiffs' operations gone wrong) such a narrative cannot be accepted by the Court on a motion to dismiss. Instead, a plain reading of Plaintiffs' Amended Complaint, and acceptance of any non-conclusory allegations as true, is required.  In doing so, the Court has carefully reviewed the Amended Complaint and although some allegations within it are conclusory, there are sufficient allegations that have been properly plead.  Indeed, there are a number of allegations, plead with specificity, that support Plaintiffs' theory that the Individual and Corporate Defendants were acting together to accomplish the alleged scheme.

First, Plaintiffs allege that Defendant Montesano met with Mr. Arguello and Mr. Garcia— executives of the Corporate Defendants, who were direct competitors to his employer—multiple times, beginning as early as January 2020.  ECF No. [41] ¶¶ 87–91.  These meetings often took place without the knowledge of Plaintiffs and/or with Montesano affirmatively concealing that he had met with the Corporate Defendants.  *Id.*  Second, Plaintiffs allege that Defendant Montesano directed Defendant Lopina to create a PowerPoint presentation, labeled as a presentation for the

Corporate Defendants, with confidential information.  *Id.* ¶¶ 92–98.  Indeed, the PowerPoint file was named "COL_Digital Origination Police CFG Slides 18022020."  ECF No. [41-3] at 2.  Third, Plaintiffs allege Defendant Lopina did create that PowerPoint presentation and sent it to Montesano immediately prior to his trip to Boston, where Defendant BayBoston is headquartered. ECF No. [41] ¶¶ 92–98.  Fourth, Plaintiffs allege Defendants Montesano and Lopina organized a meeting with Mr. Garcia to discuss the progress of the "Dragonfly Project," without disclosing the meeting to Plaintiffs.  *Id.* ¶¶ 106–08.  Fifth, Plaintiffs allege Defendant CFG Colombia's first client was the Colombian police, who were the subject of the confidential PowerPoint presentation created for the Corporate Defendants using Plaintiffs' confidential information.  *Id.* ¶ 141.  Finally, Defendant CFG Colombia "copied and pasted" text from Bayport's online interface, policies, procedures, and online origination application process—which was only available to Bayport's verified customers—for use in launching their own platform.  *Id.* ¶¶ 143–45.  These allegations are sufficient to support the claim that both Individual Defendants were exchanging confidential information with the Corporate Defendants that the Corporate Defendants later used.  Indeed, having made this finding, the Defendants' arguments in other contexts asking the Court to ignore the "double agent" theory as insufficient are rejected.  If the Court takes these and other allegations as true, which it must at this stage, Plaintiffs have adequately stated a claim for aiding and abetting breach of fiduciary duties against all Defendants.  Thus, the Motions to Dismiss, ECF Nos. [52], [53], and [54], should be **DENIED** as to Count IV.

*__Counts V and VI__*:  To state a claim under Florida's Uniform Trade Secrets Act (FUTSA) (Count V), a plaintiff must show that: "(1) it possessed a 'trade secret' and (2) the secret was misappropriated."  *Financial Information Technologies, LLC v. iControl Systems, USA, LLC*, 21 F.4th 1267, 1273 (11th Cir. 2021) (quoting *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898

F.3d 1279, 1297 (11th Cir. 2018)).  "A 'trade secret' is defined as follows:  information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  *Id.* (quoting FLA. STAT. 688.002(4)).  "Misappropriation occurs when a trade secret is acquired 'by someone who knows or has reason to know that the secret was improperly obtained or who used improper means to obtain it.'"  *Id.* (quoting *Yellowfin*, 898 F.3d at 1297).

Similarly, to state a claim under the Federal Defend Trade Secrets Act (DTSA) (Count VI), a plaintiff must allege that "it (i) 'possessed information of independent economic value' that (a) 'was lawfully owned by' the plaintiff and (b) for which the plaintiff 'took reasonable measures to keep secret,' and (ii) the defendant 'used and/or disclosed that information,' despite (iii) 'a duty to maintain its secrecy.'"  *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1293 (M.D. Fla. 2018) (quoting *Primo Broodstock, Inc. v. Am. Mariculture, Inc.*, No. 2:17-cv-9-FtM-29CM, 2017 WL 1502714, at *11 (M.D. Fla. Apr. 27, 2017)).

The DTSA defines a "trade secret" as follows:

[A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—

(A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable

through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3).

As to both Count V, misappropriation of trade secrets under FUTSA, and Count VI, misappropriation of trade secrets under DTSA, Defendants argue that the Amended Complaint fails to state a claim upon which relief can be granted.  ECF Nos. [52] at 21–23; [53] at 14–17; [54] at 11; [55] at 2; [56] at 1–2.  Defendants note that the DTSA "largely mirrors [the] FUTSA" and accordingly analyze the two claims in the same light.  ECF Nos. [52] at 23 (quoting *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 n.13 (11th Cir. 2020)); [55] at 2.  As with Count IV, Defendants begin by urging the Court to "strip away" all conclusory allegations of any "scheme" within the Amended Complaint and argue that the remaining allegations are insufficient for Counts V and VI to proceed.  ECF Nos. [52] at 21–23; [53] at 14–17; [54] at 11; [55] at 2; [56] at 1–2.  Next, Defendants argue that the Amended Complaint fails to "identify with reasonable particularity the nature of the trade secret[s] involved," as required under both the FUTSA and DTSA.  ECF Nos. [52] at 22–23 (quoting *XTec, Inc. v. Hembree Consulting Servs., Inc.*, 183 F. Supp. 3d 1245, 1257 (S.D. Fa. 2016)); [55] at 2.  The only allegations that Defendants concede contain "slightly more particularity" relate to: (1) the Digital Origination Confidential CFG PowerPoint, shared by the Individual Defendants to the Corporate Defendants (ECF No. [41] ¶¶ 95–96), and (2) the Corporate Defendants' use of nearly identical text found in Plaintiffs' online origination application process, which Plaintiffs allege is confidential, and which Defendants argue cannot constitute a trade secret as it is publicly available online (ECF No. [41] ¶¶ 143, 145).  ECF No. [52] at 22–23; [55] at 2.  Without more, however, Defendants maintain that the allegations are insufficient to state a claim.  ECF Nos. [52] at 21–23; [53] at 14–17; [54] at 11; [55] at 2; [56] at 1–2.

Plaintiffs respond that Defendants seek far more information regarding the existence of trade secrets than is necessary at the pleading stage. ECF No. [74] at 20–21. Plaintiffs contend their trade secret allegations are sufficiently particular to state a claim, and they need not disclose the exact trade secrets themselves in a public pleading. *Id.* Plaintiffs note that their descriptions include "Plaintiffs' credit processing systems, product configuration and software relating to Plaintiffs' current and future products and services, customer information and pricing strategies, business forecasts, marketing strategies, and business expansion plans," all of which are sufficient to state a claim under the FUTSA and DTSA. *Id.* at 21 (quoting ECF No. [41] ¶¶ 211, 221).

Defendants reply that they are not seeking for Plaintiffs to disclose their trade secrets. ECF No. [91] at 13. Rather, Defendants clarify that Plaintiffs simply must identify the trade secrets at issue, rather than only providing "categorical descriptions" as they have done in the Amended Complaint. *Id.* at 14. As alleged, Defendants contend that the trade secret claims under FUTSA and DTSA are too broad and insufficient to state a claim. *Id.* at 14–15.

The Court finds that the Amended Complaint contains enough specificity to state a claim under both the FUTSA and DTSA. At this stage of the proceedings, Plaintiffs "need only describe the misappropriated trade secrets with 'reasonable particularity.'" *777 Partners v. Pagnanelli*, No. 20-cv-20172, 2022 WL 4597804, at *8 (S.D. Fla. Mar. 16, 2022) (quoting *Jabil Inc. v. Essentium, Inc.*, No. 19-cv-1567-T-23SPF, 2020 WL 708140, at *4 (M.D. Fla. Feb. 12, 2020)). "[T]o satisfy this requirement at the dismissal stage in federal court, the plaintiff need only allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016). Plaintiffs include at least eight paragraphs in the Amended Complaint regarding the description of over thirty trade secrets at issue—for example, "credit algorithms,"

"proprietary and non-public digital origination processes," "current and prospective customer lists," and "credit processing methods."  *See* ECF No. [41] ¶¶ 49, 50, 53, 95, 142, 147, 167, 211.

While Defendants assert that these are no more than "categories" of trade secrets, the Court finds otherwise.  Plaintiffs' allegations herein do provide "reasonable particularity" as to the trade secrets at issue.  It is clear from the Amended Complaint that Plaintiffs allege misappropriation of their "digital origination process," which they allege the Corporate Defendants directly copied onto their own platform, "credit processing systems," "pricing strategies," "credit formulas," "product configuration and software," "marketing strategies," and other information developed and used by Plaintiffs over time.  *See id.*  If the Court takes these allegations as true, which it must at this stage, Plaintiffs have adequately stated a claim under both the FUTSA and DTSA against all Defendants.  Thus, the Motions to Dismiss, ECF Nos. [52], [53], and [54], should be **DENIED** as to Counts V and VI.

*Count XI:*  To state a claim for tortious interference under Florida law, a plaintiff must allege: "(1) the existence of a business relationship under which the plaintiff has legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with that relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the business relationship." *Burdick v. Bank of Am., N.A.*, 99 F. Supp. 3d 1372, 1379 (S.D. Fla. 2015) (quoting *Persaud v. Bank of Am., N.A.*, No. 14-cv-21819, 2014 WL 420853, at *14 (S.D. Fla. Aug. 28, 2014)).

As to Count XI, tortious interference with contractual relations, Defendants argue that Plaintiffs fail to show the Corporate Defendants *received* any trade secrets or confidential information from the Individual Defendants.  ECF Nos. [52] at 23–24; [53] at 14–17; [54] at 11; [55] at 2; [56] at 1–2.  Second, Defendants argue that Plaintiffs have not plausibly alleged that the

Corporate Defendants induced either of the Individual Defendants to breach contracts with Plaintiffs, or anyone else, especially given that Montesano does not work for the Corporate Defendants and Lopina never signed her employment agreement with Plaintiffs. ECF Nos. [52] at 24; [55] at 2. Third, Defendants assert that any allegations regarding Defendants' interference with "several other" non-parties' contracts are far too vague to be considered by the Court, given that some of these non-parties are unidentified. ECF Nos. [52] at 24; [55] at 2. Finally, Defendants note that the allegations within Count XI are directed at "All Defendants" and do not properly attribute actions to each Defendant, making it "almost impossible to unravel," especially after stripping away the conclusory allegations as well. ECF Nos. [52] at 24; [53] at 19 ("Plaintiffs' tortious-interference count suffers not only from the torrent of conjectural and speculative allegations but takes things a step further, tossing all five defendants into a single-count stew."); [55] at 2; [56] at 1–2.

Plaintiffs respond that there is nothing confusing about their allegations, as all Defendants were aware of and participated in the conduct constituting tortious interference. ECF No. [74] at 25. Plaintiffs rely on *Aquent LLC v. Stapleton*, 65 F. Supp. 3d 1339, 1342 (M.D. Fla. 2014), wherein the court declined to dismiss a tortious interference claim alleging that a former employee began covertly working for a competitor before resigning. *Id.* at 26. Plaintiffs assert that the Amended Complaint is even more specific than that of *Aquent*. *Id.* Next, Plaintiffs respond that the fact that Montesano does not now work for the Corporate Defendants is not relevant to what occurred while he was employed at Bayport USA, and that Lopina did not sign her employment agreement is not at issue because she accepted the agreement through her performance. *Id.*

In reply, Defendants first argue that Count XI is not only confusingly aimed at all Defendants, but also that it is in violation of Federal Rule of Civil Procedure 10(b), requiring "[a]

26

party [to] state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances," and instead is more akin to a "shotgun pleading." ECF Nos. [87] at 13 (quoting FED. R. CIV. P. 10(b)); [88] at 5; [91] at 15–16. This alone merits dismissal, according to Defendants, as the Court should "require Plaintiffs to untangle this count to comply with the pleading requirements". ECF Nos. [87] at 14; [88] at 5; [91] at 16. Defendants distinguish *Aquent* from the instant case, arguing that the facts only "bear a passing resemblance to Plaintiffs' claims here" as the plaintiff therein did not allege that the defendants were "soliciting themselves or alleging that corporate entities were accepting employment." ECF Nos. [87] at 14; [88] at 5. As to Lopina's contract, the Corporate Defendants add that it was not enforceable, and that Florida law rather than Delaware law applies to its construction and circumstances. ECF No. [91] at 16–17. Finally, the Corporate Defendants note that Plaintiffs assert tortious interference with *contractual* relations, and not *business* relations, generally, thus any interference must pertain to a contract, which Lopina did not have. *Id.* at 17.

As with the preceding counts against all Defendants, Plaintiffs have sufficiently plead a claim for tortious interference. Plaintiffs allege that the Individual Defendants provided confidential information and trade secrets to the Corporate Defendants throughout the entirety of the "scheme." *See, e.g.,* ECF No. [41] ¶¶ 96 ("Mr. Montesano shared the Digital Origination Confidential CFG PowerPoint" with the Corporate Defendants); 129 ("Ms. Lopina collected this [confidential] information at the direction of Mr. Montesano, CFG Partners and BayBoston"); 145 ("CFG Colombia has used Bayport's confidential information for use in gaining new business, stealing employees, and usurping opportunities"). Plaintiffs also clearly allege that the Corporate Defendants induced each of the Individual Defendants to share this information in breach of their respective employment agreements, and that the Individual Defendants (at the direction of the

Corporate Defendants) recruited other employees to breach their respective agreements with Plaintiffs. *See, e.g., id.* ¶¶ 11, 13, 102, 121, 139. Finally, as to the arguments regarding Lopina's contract, Count XI alleges that each Defendant tortiously interfered with multiple contractual relations (for instance, Montesano and other named and unnamed employees of Plaintiffs), such that Lopina's contract is not dispositive of the viability of Count XI. Thus, the Motions to Dismiss, ECF Nos. [52], [53], and [54], should be **DENIED** as to Count XI.

**_Counts I and II_**: To state a claim for breach of contract under Florida law, a plaintiff must allege: "(1) a valid contract; (2) a material breach of that contract; and (3) resulting damages." *Energy Smart Industry, LLC v. Morning Views Hotels-Beverly Hills, LLC*, 660 F. App'x 859, 862 (11th Cir. 2016) (citing *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999)). "To determine whether a breach occurred, we look to the obligations of each party under the contract." *Id.* at 862–63. "In Florida, 'the actual language used in the contract is the best evidence of the intent of the parties and, thus, the plain meaning of that language controls.'" *Id.* at 863 (quoting *Rose v. M/V "Gulf Stream Falcon"*, 186 F.3d 1345, 1350 (11th Cir. 1999)).

To state a claim for breach of an implied-in-fact contract under Florida law, the elements mirror that of a standard breach of contract claim. "Florida courts use breach of contract analysis to evaluate claims of breach of contract implied in fact and breach of the covenant of good faith and fair dealing." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012) (citing *Baron v. Osman*, 39 So. 3d 449 (Fla. 5th DCA 2010)).

As to Count I (breach of contract) and Count II (breach of implied-in-fact contract), the Individual Defendants' arguments differ based on their respective employment agreements. Defendant Montesano argues that Count I fails because the speculative allegations in the Amended Complaint fail to comply with Federal Rule of Civil Procedure 8's basic requirements of notice

pleading.  ECF No. [53] at 14–17.  Any allegations supporting Count I, Defendant Montesano alleges, are purely speculative—including, for example, Montesano's alleged sharing of information (including the Digital Origination Confidential CFG PowerPoint) with the Corporate Defendants whom he had only just met.  *Id.* at 14.

As to Count I, Defendant Lopina incorporates Montesano's arguments, and adds that she did not even have an employment agreement to breach.  ECF No. [54] at 11–14.  Lopina argues that section 542.335(1)(a) of the Florida Statutes bars the enforcement of any restrictive covenants in Lopina's employment agreement, because it requires restrictive covenants to be in writing for enforcement, and she neither signed nor agreed to the written employment agreement.  *Id.* 12–14.

As to Count II (the implied-in-fact contract claim), Lopina argues that it is simply an attempt to "dodge Section 542.335(1)(a)'s plain language," a tactic which has been rejected by other courts in this District.  *Id.* at 13.  Lopina cites *Iron Bridge Tools, Inc. v. Meridian Int'l Co., USA*, No. 13-cv-61289, 2016 WL 8716673, at \*5 (S.D. Fla. Feb. 2, 2016) for the proposition that a plaintiff cannot enforce an oral (or by comparison, an implied-in-fact) agreement in Florida regarding restrictive covenants, because section 542.335(1)(a) requires such covenants to be in writing and signed.  *Id.* Thus, without a signed employment agreement, Lopina asserts that she cannot be in breach of any restrictive covenants under Counts I or II.  *Id.*

Plaintiffs respond that Lopina's arguments fail for two reasons.  ECF No. [74] at 16–19.  First, the Court must accept Plaintiffs' allegations as true that Lopina agreed to the terms of her employment agreement, even if she failed to sign the agreement.  *Id.* at 17.  Second, Plaintiffs assert that the text of Lopina's employment agreement, which she agreed to through her conduct, states that Delaware law, and not Florida law, applies to the terms therein.  *Id.* at 17. Lopina's arguments relating to the Florida Statutes, then, must fail as they do not apply.  *Id.*  In the

alternative, Plaintiffs argue that should Florida law apply, Florida Courts routinely excise unenforceable terms from contracts, while the rest of the agreement remains intact. *Id.* Therefore, any unenforceable terms (the restrictive covenants) would be excised, but the remaining terms, including the prohibition of sharing trade secrets, and the duty to avoid conflicts of interest would remain enforceable and serve as the basis for a breach by Lopina. *Id.* at 18–19.

In reply, Defendant Montesano does not address Count I directly, but rather generally argues that the Amended Complaint is nothing more than conjecture, and such vague allegations cannot support any claims against him. ECF No. [87] at 1–8. Lopina argues that Plaintiffs are incorrect in arguing that Delaware law applies to Lopina's unsigned employment agreement. *Id.* at 2–3. Lopina notes that the text of the choice-of-law provision explicitly notes that "[s]hould any clause of this Agreement breach any provision of the laws and practices of the State of Florida and the United States of America, the Parties agree to review that clause and in good faith, work together to find a new suitable solution." *Id.* at 3. Lopina asserts that this is precisely such a situation, as the restrictive covenants do breach Florida law if they are unsigned. *Id.* Thus, Counts I and II should be dismissed, in whole or in part, as there are no enforceable restrictive covenants in an unsigned employment agreement capable of being breached. *Id.* at 4.

First, as to Defendant Montesano, there is no dispute that a valid employment agreement existed between himself and Plaintiffs. *See generally* ECF No. [53]. Montesano argues only that the claims within the Amended Complaint, generally, are too speculative to state a claim. *Id.* at 14–17. As stated previously herein, however, the Court must accept Plaintiffs' allegations as true, and the allegations are sufficiently plead at this stage. The Amended Complaint lays out the terms of Montesano's employment agreement and the provisions at issue therein. ECF No. [41] ¶¶ 55–70. The Amended Complaint also alleges multiple instances wherein Montesano breached its

terms.  *See, e.g., id.* ¶¶ 96 ("Because there was no non-disclosure agreement in place, Mr. Montesano's disclosures to CFG and BayBoston violated his Employment Agreement"); 127 ("Mr. Montesano's concealment of Ms. Lopina's resignation improperly prevented Plaintiffs from taking steps to protect themselves from the unfolding plot").

Second, as to Defendant Lopina, although the parties dispute the existence of a valid employment agreement,  Plaintiffs' allegations are sufficient to show that, if true, a valid employment agreement existed between Plaintiffs and Defendant Lopina.  *See* ECF No. [41] ¶¶ 71–83.  While Defendants are correct that under Florida law, restrictive covenants must be "set forth in a writing signed by the person against whom enforcement is sought," Defendant Lopina's employment agreement contains many other provisions that would not qualify as restrictive covenants.  *Id.*; FLA. STAT. § 542.335(a).  Plaintiffs point to such sections in their Opposition, such as: "[t]he Executive shall keep strictly confidential any and all technical and business information," and "[t]he Executive shall . . . use the assets of the Company entrusted to her with the utmost care and only for purposes of the Company's and Group's business(es)."  ECF No. [74] at 19.  Because the allegations in the Amended Complaint are attributable to both the restrictive covenants and the other provisions within Lopina's employment agreement, Plaintiffs have adequately stated a claim for breach of contract, and by extension, breach of implied-in-fact contract.  Thus, the Motions to Dismiss, ECF Nos. [53], and [54], should be **DENIED** as to Counts I and II.

*__Count III:__*  To state a claim for breach of fiduciary duty under Florida law, a plaintiff must allege: "the existence of a fiduciary duty, a breach of that duty, and that the plaintiff's damages were proximately caused by the breach."  *Medical & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 989 (11th Cir. 2020) (citing *Gracey v. Eaker*, 836 So. 2d 348, 353 (Fla. 2002)).

As to Count III (breach of fiduciary duties), the Individual Defendants argue that Plaintiffs' allegations are speculative.  ECF Nos. [53] at 14–17; [54] at 11.  Specifically, the Individual Defendants argue that without the shroud of "double agent" conduct, the Individual Defendants' actions are well within the scope of their ordinary employment duties and do not show any breach of fiduciary duties.  ECF Nos. [53] at 15; [54] at 11.  For instance, the Individual Defendants note that it is only "upon information and belief" that Montesano shared the Digital Origination Confidential CFG PowerPoint, and that Lopina sent it to him to be shared with the Corporate Defendants.  ECF Nos. [53] at 15; [54] at 11.  The Individual Defendants note that there are allegations of Montesano aiming to increase sales for Plaintiffs, rather than decrease, and that it is entirely implausible that the Individual Defendants would share information about Plaintiffs' business to the Corporate Defendants upon first meeting them.  ECF Nos. [53] at 15; [54] at 11.

Plaintiffs respond that the Individual Defendants "do not even try to show that the [Amended Complaint] fails to plead facts in support of each element of" Count III, such that it "leaves the Court (and Plaintiffs) guessing as to what specific element(s) Defendants contend is deficient".  ECF No. [74] at 16.  This alone, Plaintiffs assert, is enough to independently deny the Motions to Dismiss as to Count III.  *Id.*

The Individual Defendants do not address Count III explicitly in their respective replies.  ECF Nos. [87]; [88].  Rather, the Individual Defendants focus on their broader argument that the speculative allegations must be stripped away from the entire Amended Complaint, and that once such allegations are removed, there is nothing left to support any count, including Count III.  ECF Nos. [87] at 1–8; [88] at 4.

As with Count IV, aiding and abetting breach of fiduciary duties, the Court finds that the Amended Complaint is sufficient as to Count III, breach of fiduciary duties.  First, the Court must

accept Plaintiffs' non-conclusory allegations as true.  *See Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1214 (S.D. Fla. 2021).  In doing so, Plaintiffs have alleged that the Individual Defendants each owed fiduciary duties to Plaintiffs by way of their employment.  ECF No. [41] ¶¶ 13, 83.  Plaintiffs have also alleged multiple instances on which each of the Individual Defendants breached those fiduciary duties in furtherance of the "scheme" with the Corporate Defendants, and multiple instances of harm flowing from those alleged breaches.  *See, e.g., id.* ¶¶ 90, 94, 96, 128–29, 141, 142 ("The process CFG Partners now boasts about was Bayport Colombia's exact proprietary and exclusive process that Mr. Montesano wrongfully shared with CFG Partners").  Plaintiffs have therefore sufficiently alleged all elements of Count III against each of the Individual Defendants.  Thus, the Motions to Dismiss, ECF Nos. [53], and [54], should be **DENIED** as to Count III.

> <u>***Count VII***</u>:  To state a claim for civil theft under Florida law, a plaintiff must allege: "the defendant (1) knowingly (2) obtained or used, or endeavored to obtain or use, the plaintiff's property with (3) 'felonious intent' (4) wither temporarily or permanently to (a) deprive the plaintiff of the right or benefit of the property, or (b) appropriate the property to the defendant's own use or the use of another."  *Omnipol, A.S. v. Multinational Defense Servs., LLC*, 32 F.4th 1298, 1308–09 (11th Cir. 2022) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009)); *see also Wachovia Bank N.A. v.* Tien, 658 F. App'x 471, 474 (11th Cir. 2016) ("To establish a Florida state law claim for civil theft, a plaintiff must prove, by clear and convincing evidence that it was injured as a result of a violation of Florida's criminal theft statute.");  FLA. STAT. § 772.11 ("Civil remedy for theft or exploitation").

> As to Count VII, civil theft, the Individual Defendants argue that Plaintiffs failed to abide by the safe harbor provision of Florida Statutes Section 772.11, which requires a written demand

prior to legal action.  ECF No. [53] at 20.  Specifically, Florida Statute Section 772.11 provides, in relevant part, that "the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages under this section."  *Id.* (quoting FLA. STAT. § 772.11).  Should a plaintiff fail to make such a written demand, the Individual Defendants argue, the Court "may grant dismissal with leave to amend once compliance occurs."  *Id.* (citing *Korman v. Iglesias*, 736 F. Supp. 261, 267 (S.D. Fla. 1990)).  The Individual Defendants acknowledge that Plaintiffs did send them cease-and-desist letters prior to initiating the instant action, however, they note that the letters did not contain the statutorily required demand.  *Id.*  Indeed, the Individual Defendants argue that it was only toward the Corporate Defendants that Plaintiffs demanded the return of analog and electronic storage devices—which is insufficient as it is not directed to "the person liable for damages" under Section 772.11.  *Id.* at 21.

Plaintiffs respond that while they may not have strictly conformed with the safe harbor requirement, such non-compliance is clearly excusable herein and does not warrant dismissal.  ECF No. [74] at 27–28.  Plaintiffs note that courts in the Eleventh Circuit "have enforced the demand requirement leniently and routinely denied motions to dismiss for nonconforming claims[,]" especially where "the parties [have] familiarity with the acts complained of."  *Id.* at 27 (quoting *Catano v. Capuano*, No. 18-cv-20223, 2020 WL 639406, at *9 (S.D. Fla. Feb. 11, 2020)).  Plaintiffs' demand letters to the Individual Defendants stated that any demands to the Corporate Defendants, which included the return of analog and electronic storage devices, were incorporated therein, and in any event the Individual Defendants had notice that Plaintiffs demanded the return of their property.  *Id.*

In reply, the Individual Defendants argue that Plaintiffs cannot simply ignore the plain language of Florida Statute Section 772.11 because "lenient enforcement of the statute's demand

requirement should not come at the expense of the statute's plain language".  ECF Nos. [87] at 8; [88] at 4.  The Individual Defendants maintain that Plaintiffs failed to meet the statute's requirements, an argument which the Individual Defendants note Plaintiffs have essentially conceded, and that such abject failure to abide by the statute should not be rewarded herein.  ECF Nos. [87] at 8–9; [88] at 4.

The Court finds that Plaintiffs' failure to strictly comply with the safe harbor provision of Section 772.11 of the Florida Statutes does not require dismissal.  As Plaintiffs note, "[C]ourts typically do not dismiss civil theft claims based solely on a party's failure to provide a pre-suit written demand, unless the statute of limitations expires before a proper demand is made." *Bayuk v. Prisianjniouk*, No. 8:18-cv-163-T-SPF, 2018 WL 7825203, at \*3 (M.D. Fla. Nov. 27, 2018); *see Oginsky v. Paragon Properties of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1374 (S.D. Fla. 2011) (dismissing the plaintiff's civil theft claim without prejudice and allowing it to be re-plead after complying with the statute, noting "the Southern District of Florida has been lenient in the application of this rule").  Specifically, "courts in our Circuit have enforced the demand requirement leniently and routinely denied motions to dismiss for nonconforming claims" because the demand requirement is not substantive and exists simply to encourage early resolution of claims. *Catano v. Capuano*, No. 18-cv-20223, 2020 WL 639406, at \*9 (S.D. Fla. Feb. 11, 2020) (denying motion to dismiss civil theft claim for failure to strictly comply with written demand requirement of Fla. Stat. § 772.11) (collecting cases).  Notably, Plaintiffs did send written cease-and-desist letters to Defendants, albeit without the exact language contemplated by the Florida Statutes. *See* ECF No. [41] ¶¶ 157–58.  The Court finds that the failure to provide the written demand is harmless and does not warrant dismissal of Count VII.  Indeed, dismissal without

prejudice of the single count would only delay the litigation at this stage.  Thus, the Motions to Dismiss, ECF Nos. [53] and [54], should be **DENIED** as to Count VII.

   ***Counts VIII and IX***:  To state a claim for conversion under Florida law, Count VIII, a plaintiff must allege: "(1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with ownership therein."  *TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 1289, 1299 (S.D. Fla. 2016) (quoting *Joe Hand Promotions, Inc. v. Creative Enter., LLC*, 978 F. Supp. 2d 1236, 1241 (M.D. Fla. 2013)).

   To state a claim for a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), Count IX, a plaintiff must allege that the defendant: (1) "intentionally accesse[d] a computer without authorization or exceed[ed] authorized access," and (2) obtained "information from any protected computer." *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1173 (11th Cir. 2017) (quoting 18 U.S.C. § 1030(a)(2)). Additionally, in a civil matter, this claim may only be brought where the conduct involves "[one] of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." *Id.* at 1173 (quoting 18 U.S.C. § 1030(g)). Relevant here, a plaintiff must allege they incurred "a minimum 'loss' of $5,000 as a result of the defendant's violation of the CFAA." *Id.* (quoting 18 U.S.C. § 1030(c)(4)(A)(i)(I)).

   As to Count VIII (conversion), and Count IX (violation of the CFAA), the Individual Defendants argue that both counts are inherently inconsistent with each other and with the general allegations of the Amended Complaint such that they must be dismissed.  ECF Nos. [53] at 22–23; [54] at 11–12.  Specifically, while Count VIII requires that the Individual Defendants exert dominion over the confidential information at issue, the allegations in Count IX allege that Plaintiffs retained possession of the confidential information.  ECF Nos. [53] at 22–23; [54] at 11–12.  As to Count VIII, the Individual Defendants argue, "[t]he gist of a conversion has been

declared to be not the acquisition of the property of the wrongdoer, but the wrongful *deprivation* of a person of property to the possession of which he is entitled." ECF Nos. [53] at 22 (quoting *Transway Airfreight Cargo, Inc. v. Biltagi*, 47 Fla. L. Weekly D1097 (Fla. 3d DCA May 18, 2022)) (emphasis added); [54] at 11–12. The Individual Defendants argue that they *at most* acquired copies of information that remained in Plaintiffs' systems and domain, thus failing to constitute a conversion. ECF Nos. [53] at 23; [54] at 11–12.

As to Count IX, the Individual Defendants point to the allegation that Plaintiffs "have the data and purportedly spent $5,000.00 to investigate 'the data breach and whether the breach had damaged, deleted, or otherwise altered any of Plaintiffs' . . . data," and note that such an allegation cannot stand when it is inherently inconsistent with the premise that the Individual Defendants asserted dominion over the confidential information such that Plaintiffs were deprived of it. ECF Nos. [53] at 22–23; [54] at 11–12. Thus, the Individual Defendants argue that both counts fail to state a claim and must be dismissed. ECF Nos. [53] at 22–23; [54] at 11–12.

Plaintiffs respond that Counts VIII and IX should not be dismissed because pleading alternative theories is squarely permitted under Federal Rule of Civil Procedure 8. ECF No. [74] at 23. Further, Plaintiffs assert that the theories need not be alternative because under Florida law, "a conversion action can be brought related to the *copying* of a non-rival good[.]'" *Id.* (quoting *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1288 n.5 (11th Cir. 2018)) (emphasis added). Therefore, Plaintiffs contend that both the conversion and CFAA claim may coexist if the Individual Defendants copied Plaintiffs' confidential information without depriving Plaintiffs of access to the same. *Id.*

The Individual Defendants reply that Plaintiffs' legal theory regarding the copying of confidential information is incorrect. ECF Nos. [87] at 9–10; [88]. The Individual Defendants

note that Plaintiffs' use of *Yellowfin* is limited to a footnote, which, in dicta stated that a claim could theoretically be plead when copying confidential information. ECF Nos. [87] at 10; [88]. However, the Individual Defendants assert that such a statement was not only conjecture but was also based on case law that has since been preempted by FUTSA itself. ECF Nos. [87] at 10 (*Warshall v. Price*, 629 So. 2d 903, 905 (Fla. 4th DCA 1993), *preempted by* FLA. STAT. § 688.008(1)); [88]. Thus, the Individual Defendants argue, because the claims were not plead in the alternative and cannot stand together, they must be dismissed. ECF Nos. [87] at 9–10; [88].

Counts VIII and IX are both sufficient as plead to state a claim. First, while the parties dispute whether the counts were properly plead as alternative theories—the counts may stand together as they are not inherently inconsistent. Count VIII for conversion alleges that Plaintiffs' confidential information *and* physical laptops were the subjects of the conversion by the Individual Defendants. ECF No. [41] ¶ 244. Such an allegation can be reconciled with Count IX, which alleges that the Individual Defendants breached and copied information from Plaintiffs' systems. *Id.* ¶¶ 250–51. Plaintiffs allege multiple forms of confidential information, such that the Individual Defendants' asserting dominion over some information (or even just over physical laptops) can be reasonably inferred. Plaintiffs' allegations therefore are not inherently inconsistent and do not warrant dismissal of the counts herein. Thus, the Motions to Dismiss, ECF Nos. [53] and [54], should be **DENIED** as to Counts VIII and IX.

*__Count X__*: The Computer Abuse and Data Recovery Act (CADRA) was enacted "to safeguard computer systems against unauthorized access." *Kipu Sys. LLC v. ZenCharts LLC*, No. 17-cv-24733, 2019 WL 7371879, at *7 (S.D. Fla. Oct. 16, 2019) (citing FLA. STAT. § 688.801). To state a claim under CADRA, a plaintiff must show that the defendant "'knowingly and with intent to cause harm or loss' '[o]btain[ed] information from a protected computer without

38

authorization.'"  *Id.*  "'Without authorization' is defined as: 'access to a protected computer by a person who: (a) Is not an authorized user; (b) Has stolen a technological access barrier on a protected computer without the express or implied permission of the owner, operator, or lessee of the computer or the express of implied permission of the owner of information stored in the protected computer.'"  *Id.* (quoting FLA. STAT. § 688.802(9)(a)–(c)).

The Individual Defendants argue that the allegations are too speculative and fail to plead any concrete facts to support the alleged unlawful access of their network or computers, including dates, times, or information accessed.  ECF Nos. [53] at 17; [54] at 11.  For instance, Plaintiffs' allegation that Montesano "knowingly and with intent to defraud and cause harm accessed Bayport's password-protected computers and computer network and obtained information for the secret purpose of using it for the Competing Companies and Mr. Montesano's competing new business, Kumano Ventures, without authorization," contains no specific facts to support that such a breach existed.  ECF Nos. [53] at 17; [54] at 11.  Additionally, the Individual Defendants argue that to the extent Plaintiffs alternatively base their CADRA claim on the fact that the Individual Defendants had lawful access to the information at issue and used it for an improper purpose, such conduct would not fall under CADRA's plain-language definition of "without authorization," and would not constitute a violation of the statute.  ECF Nos. [53] at 18; [54] at 11.

Plaintiffs respond that Count X does state a claim, and that once again the Individual Defendants ask for much more than is required under the pleading standard of Federal Rule of Civil Procedure 8.  ECF No. [74] at 24.  Plaintiffs assert that they need only show that "the occurrence of unauthorized access was 'plausible,'" and not that it conclusively happened.  *Id.* (citing *Stirling Int'l Realty, Inc. v. Soderstrom*, No. 14-cv-1109-ORL-40, 2015 WL 2354803, at *4 (M.D. Fla. May 15, 2015)).  As to the Individual Defendants' alternative argument, Plaintiffs

note that the CADRA claim is not limited to the actions of the Individual Defendants while employed at Bayport USA, but rather extends to actions after their departure as well. *Id.* Thus, their conduct would fall under the statutory meaning of "without authorization" when those additional allegations are considered. *Id.*

In reply, the Individual Defendants argue that while Plaintiffs' CADRA allegations need not be conclusive, they need to be at least plausible, and they are not. ECF Nos. [87] at 11; [88]. The Individual Defendants assert that Plaintiffs' case law is not instructive, as the cases cited by Plaintiffs did not involve CADRA claims at all. ECF Nos. [87] at 11; [88]. Additionally, the Individual Defendants argue that Plaintiffs failed to address their argument that CADRA does not include the phrase "exceeds [] authorized access," but rather avoid the argument by stating that Plaintiffs' allegations cover more than the conduct occurring while the Individual Defendants were employed with Bayport USA. ECF Nos. [87] at 11–12; [88]. The Individual Defendants note that this argument, however, "underscore[s] that Count X also seeks liability for alleged conduct that the Individual Defendants took while they were authorized users at Bayport," and therefore were unable to statutorily access the system "without authorization." ECF Nos. [87] at 12; [88].

The Court finds that Plaintiffs have plead enough to state a CADRA claim. Plaintiffs allege that the Individual Defendants used their Bayport Colombia-issued laptops to access the Bayport Colombia network "*after* their employment at Bayport Colombia," to further their own business interests (including those of CFG Colombia, Lopina's new employer). ECF No. [41] ¶ 246. Such an allegation falls within the statutory definition of "without access," as the Individual Defendants had already severed ties with Plaintiffs and their respective access was revoked. *Id.* Although some allegations, standing alone, might not be sufficient, taken in the light most favorable to Plaintiffs and given the entire set of allegations, Plaintiffs have adequately stated a claim for

violation of CADRA in Count X.  Thus, the Motions to Dismiss, ECF Nos. [53] and [54], should be **DENIED** as to Count X.

### C. The Rule 12(b)(2) Motion to Dismiss Should Be Denied.

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'"  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).  "We consider two questions in resolving personal jurisdiction: (1) whether personal jurisdiction exists over the nonresident defendant [] under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution."  *Id.* (citing *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004)).

The Corporate Defendants argue, albeit briefly, that the Amended Complaint fails to assert personal jurisdiction over them, pursuant to both the Florida Long Arm Statute and the Due Process Clause.  *Id.* at 25–27.  As to the Florida Long Arm Statute, the Corporate Defendants contend that they are "non-Florida corporations," characterizing Plaintiffs' allegations that CFG Partners and CFG Colombia each have one office in Florida, and that BayBoston has "substantial investments" in Florida as "*de minimis*" and unsatisfactory under Florida Statute Section 48.193(1)(a)(1), especially given the fact that Plaintiffs did not show a nexus between the actions at issue and the Corporate Defendants' presence in Florida.  *Id.*  Additionally, the Corporate Defendants assert that without considering the allegations regarding a "scheme," there exist no allegations of tortious conduct by the Corporate Defendants, barely any acts at all by the Corporate Defendants in Florida, and no harm caused in Florida (apart from the fact that "Bayport USA's Miami office was 'wiped

out,'"), which is unsatisfactory under Florida Statute Section 48.193(1)(a)(2).  *Id.*  As to due process, the Corporate Defendants state summarily that it would be "neither reasonable nor fair" to subject them to litigation in Florida based on a "baseless" Amended Complaint.  *Id.* at 27.

In response, Plaintiffs argue that the Individual Defendants' actions in furtherance of the "scheme" are attributable to the Corporate Defendants for jurisdictional purposes.  ECF No. [74] at 28.  Plaintiffs contend that because the Individual Defendants' tortious conduct at issue occurred "almost entirely in Miami," it follows that the Corporate Defendants committed tortious conduct in Florida under the Florida Long Arm Statute.  *Id.* at 28–29.  Additionally, Plaintiffs contend that the Corporate Defendants did commit tortious acts in Florida, through their executives Mr. Garcia and Mr. Arguello, who traveled to Miami to meet with Defendant Montesano at the outset of the scheme.  *Id.* at 29.  As to their alternative argument that the Corporate Defendants have the requisite business presence in Florida, Plaintiffs note that "[i]t is hard to imagine a more substantial business presence from which the claims arise than having CFG Colombia's *CEO* (Ms. Lopina) based out of CFG's office *in Miami*, where she uses Bayport's trade secrets to illegally compete with Bayport in violation of her contractual and fiduciary duties."  *Id.* at 30 (emphasis in original).

The Corporate Defendants reply that Plaintiffs' position that the Individual Defendants' actions can be imputed to the Corporate Defendants, is "just the same, conclusory 'double-agent' theory dressed in new legal garb."  ECF No. [91] at 18.  The Corporate Defendants reiterate their argument as to the whole Amended Complaint, that the conclusory allegations of the "scheme" involving "double agents" must be stripped away, leaving no tortious conduct in Florida associated with the Corporate Defendants to constitute a basis for personal jurisdiction.  *Id.*

As their basis for personal jurisdiction over the Corporate Defendants, the Amended Complaint references two sections of the Florida Long Arm Statute.  First, Section 48.193(1)(a)(2)

provides for personal jurisdiction over a defendant "[c]ommitting a tortious act within this state." FLA. STAT. § 48.193(1)(a)(2).  As to that, the Amended Complaint alleges Defendant BayBoston "committed tortious acts within Florida; [] stole trade secrets within this state in violation of Fla. Stat. § 812.081; [] violated Florida's Uniform Trade Secrets Act, Fla. Stat. § 688.001 et seq.; [] misappropriated trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836; and [] committed other tortious acts within Florida . . . ."  ECF No. [41] ¶ 37.  The Amended Complaint similarly alleges that Defendants CFG Partners and CFG Colombia each "stole trade secrets within this state in violation of Fla. Stat. § 812.081; [] violated Florida's Uniform Trade Secrets Act, Fla. Stat. § 688.001 et seq.; [] misappropriated trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836; and [] committed other tortious acts within Florida, as set out below."  *Id.* ¶¶ 38–39.  In addition, Plaintiff argues that the Amended Complaint's allegations about the Individual Defendants, over whom the Court clearly has jurisdiction, are attributed to the Corporate Defendants for purpose of determining jurisdiction.  ECF [74] at 28.

For this basis, Plaintiffs largely rely on their theory that the Individual Defendants were acting as "double agents" of the Corporate Defendant to argue that the conduct of the Individual Defendants should then be imputed onto the Corporate Defendants.  In support of that theory, Plaintiffs rely on *Keim v. ADF MidAtlantic, LLC*, for the proposition that a defendant can be subject to personal jurisdiction through the acts of their agent.  199 F. Supp. 3d 1362, 1368–69 (S.D. Fla. 2016) ("Nevertheless, it is well-established that general agency principles apply when determining personal jurisdiction. [] And Florida's long-arm statute expressly incorporates this well-established principle by stating that the acts enumerated in the statute, including committing a tortious act within the state, may give rise to personal jurisdiction when done 'personally *or*

*through an agent*.'") (citing *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1272 (11th Cir. 2002); FLA. STAT. § 48.193(1)(a)).

However, the Corporate Defendants aiding and abetting the Individual Defendants (which is what is plead), does not make the Individual Defendants "agents" of the Corporate Defendants. Indeed, although Plaintiffs characterize the Individual Defendants as "double agents" (as a stylistic description) there is no allegation nor argument made, not even in the Opposition, that the Individual Defendants were the agents (as the term is legally defined) of the Corporate Defendants. As the Corporate Defendants note, Plaintiffs argue that the Individual Defendants' conduct should be attributed to the Corporate Defendants under principles of agency, but yet do not actually argue or allege that the Individual Defendants are "agents," under Florida law. Having fallen short of actually pleading or arguing that they are agents, this theory is not sufficient.

Second, Plaintiffs assert personal jurisdiction over the Corporate Defendants under Section 48.193(1)(a)(1) that provides for personal jurisdiction over a defendant who is "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." FLA. STAT. § 48.193(1)(a)(1). Relevant to Section (1)(a)(1), the Amended Complaint alleges that Defendant BayBoston "has substantial investments in Florida," and "operates, conducts, engages in or carries out business or business ventures within Florida." ECF No. [41] ¶¶ 35, 37. The Amended Complaint alleges that Defendant CFG Partners "maintains offices in Florida" and "operates, conducts, engages in or carries out business or business ventures within Florida." *Id.* ¶ 38. Similarly, the Amended Complaint alleges that Defendant CFG Colombia "maintains an office in Miami, Florida where Defendant Lucia Lopina now directs and manages all its corporate and business affairs as its CEO," "maintains a corporate office in

Florida," and "operates, conducts, engages in or carries out business or business ventures within Florida." *Id.* ¶¶ 39–40.

As to this argument the Corporate Defendants do not dispute that CFG Partners and CFG Colombia each have an office in Florida, nor do they dispute that BayBoston has "substantial investments" in Florida. ECF No. [52] at 21–22. Instead, the Corporate Defendants argue that the allegations in the Amended Complaint are insufficient to establish personal jurisdiction because they do not "arise from" the Corporate Defendants' business presence in Florida. *Id.* Plaintiff notes, however, that Defendant Lopina currently works for CFG Colombia and manages its operations from an office in Miami, Florida. ECF No. [74] at 30. Indeed, the Amended Complaint alleges that the scheme is ongoing, and that the Corporate Defendants are currently operating with the use of Plaintiffs' trade secrets and "luring" employees from Plaintiffs. *See* ECF No. [41] ¶¶ 21–24, 26. Such allegations are sufficiently related to the Corporate Defendants' business presence in Florida—especially by way of Lopina herself, who is now an executive of the Corporate Defendants.

Finally, the Corporate Defendants' due process argument is conclusory—simply characterizing the Amended Complaint as "baseless"—which the Court does not accept. Thus, taking Plaintiffs' non-conclusory allegations as true, the Amended Complaint contains enough to subject the Corporate Defendants to personal jurisdiction in this Court. Thus, for the reasons stated herein, the Amended Complaint sufficiently alleges personal jurisdiction over the Corporate Defendants, and the Corporate Defendants' Motion to Dismiss should be **DENIED** on this ground.

## IV.    CONCLUSION

For the reasons noted above the Court **RECOMMENDS** that the Corporate Defendants' Motion to Dismiss, ECF No. [52], Montesano's Motion to Dismiss, ECF No. [53], Lopina's

Motion to Dismiss, ECF No. [54], the Motion for Judicial Notice, ECF No. [51], and the additional substantive arguments within the Motion to Adopt the Motion for Judicial Notice, ECF No. [57], be **DENIED**.

## V.   OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, no later than **FOURTEEN (14) DAYS** from the date of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Report and Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191– 92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida on March 3, 2023.

_____
**JACQUELINE BECERRA**